## STATE OF GEORGIA v. WESTERN AND ATLANTIC RAILROAD et al.

No. 12160. MARCH 8, 1938.

*M. J. Yeomans,* attorney-general, *D. M. Parker,* and *O. H. Dukes,* for plaintiff.

*Tye, Thomson & Tye, Harold Hirsch, Marion Smith, A. S. Clay,* and *H. J. Haas,* for defendant.

RUSSELL, Chief Justice. The State of Georgia brought a petition against the Nashville, Chattanooga and St. Louis Railway, a Tennessee corporation having an office, agent, and place of business in Fulton County, Georgia, the Western and Atlantic Railroad; a corporation of the State of Georgia, and Peachtree-Whitehall Inc., a Georgia corporation, praying that the defendants be enjoined from carrying out the terms of a lease contract which had been executed by the two first-named defendants as lessor and the last-named defendant as lessee, under the terms of which Peachtree-Whitehall Inc. was authorized to construct a building or buildings over the right of way of the Western and Atlantic Railroad between Whitehall and Broad Streets in the City of Atlanta. After hearing evidence the judge refused an injunction, and the plaintiffs excepted. The petitioner alleged, in substance, that under the terms of the lease contract entered into between the State of Georgia and the Nashville, Chattanooga and St. Louis Railway on May 11, 1917, whereby the State's property known as the Western and Atlantic Railroad was leased for a term of fifty years, the Nashville, Chattanooga and St. Louis Railway was not authorized to enter into the contract with Peachtree-Whitehall Inc., with-

out the approval in writing of the Governor of the State; that the defendants had repeatedly endeavored to secure such executive approval, both from the present Governor and his predecessors, but without success; that the erection of the buildings as contemplated by the lease contract with Peachtree-Whitehall Inc. involved the use of property needed for railroad purposes within the meaning of the contract executed by the State on May 11, 1917, and was also violative of the provision of said contract between the State and the Nashville, Chattanooga and St. Louis Railway, as follows: "There is hereby expressly reserved to the party of the first part [the State] the power to authorize the laying out, building, and construction of such ways, streets, roads, bridges, or viaducts across or along the properties leased as may be deemed to be to the interest of the people of Georgia, without let or hindrance." A copy of this contract was attached to the petition, as also was a copy of the agreement between the defendant railway companies and Peachtree-Whitehall Inc. In the last-mentioned contract, after specifications as to the construction of the proposed buildings, it is provided in paragraph 8 that "The said buildings, when completed, are hereby leased and demised by the railway to the party of the second part, its successors and assigns, during the entire remainder period of the said leasehold estate, and *subject to all the conditions thereof* [italics ours] vested in the railway by its lease from the State of Georgia, . . provided that nothing herein contained shall authorize the second party . . to use the land level of the territory covered by this lease save for the necessary supports for the building or buildings to be constructed and the maintenance thereof, and the railway's use thereof for railroad purposes shall not be impaired." Paragraph 15 of this contract provides that if "at any time during the period of this lease contract, the removal of said buildings, or either of them, is deemed necessary by the railway in the operation of its proper railroad business, it shall have the right to cancel and terminate this lease, upon ninety days notice." Paragraph 17 provides that "In the event the leasehold interest of the railway in and to said area, existing by virtue of its lease contract with the State of Georgia . . shall terminate prior to December 27, 1969, by reason of any agreement between the railway and the State, or because of default on the part of the railway, the railway will

indemnify and hold harmless the party of the second part . . against all actual loss or damage arising out of or from such prior termination."

Notwithstanding the numerous assignments of error on the judgment refusing an injunction, only three principal questions are raised: First, does the contract of lease entered into between the State and the Nashville, Chattanooga and St. Louis Railway, dated May 11, 1917, include the underground and overhead rights in the property which the Nashville, Chattanooga and St. Louis Railway and the Western and Atlantic Railroad have agreed to lease to Peachtree-Whitehall Inc? Second, are such underground and overhead rights needed for railroad purposes within the meaning of said lease contract of May 11, 1917, and the acts of the General Assembly under authority of which it was executed? Third, does the contract entered into between Peachtree-Whitehall Inc., and the two railroad companies violate any terms of the lease agreement between the State of Georgia and the Nashville, Chattanooga and St. Louis Railway? Paragraph 10 of the lease contract of May 11, 1917, is as follows: "The right of the party of the second part to sublet any part of the property not useful for railroad purposes shall be exercised subject to the terms, conditions, obligations, and requirements of the said acts of the General Assembly and of this contract of lease. No such subletting shall extend beyond the term of this lease, whether by expiration of time, forfeiture, or other cause; nor shall any such sublease confer upon the tenant or sublessee any greater or other right to use the property than the party of the second part would have under this contract of lease; nor shall it give rise to any privity of contract between the sublessee and the State, nor introduce a new party to this contract, nor relieve the party of the second part of any duty, obligation, or requirement imposed upon it by law or by this contract of lease." The act of 1915 (Ga. L. Ex. Sess. 1915, pp. 119-132), creating a leasing commission for the Western and Atlantic Railroad, provided, in sec. 3, that the commission should "consider and determine, subject to the provisions of this act, the following: . . Whether or not it would be wise and expedient to reserve from any of said properties, either at the terminals or elsewhere upon the line, overhead or underground rights, looking to their subsequent use separate from railroad purposes, with

specifications and recommendations thereof." Also, that the "said lessee shall not sublet or release the said Western and Atlantic Railroad, or any part thereof, without the approval in writing of the Governor of the State." By an act approved August 19, 1916 (Ga. L. 1916, pp. 148-149), the above provision was changed to read: "Said lessee shall not sublet or release the said Western and Atlantic Railroad, or any part thereof, except such as is not needed for railroad purposes, without the approval in writing of the Governor of the State." Section 12 of said lease contract of May 11, 1917, provided: "There is hereby expressly reserved to the party of the first part the power to authorize the laying out, building, and construction of such ways, streets, roads, bridges, or viaducts across or along the properties leased as may be deemed to be to the interest of the people of Georgia, without let or hindrance, and without liability over to the party of the second part by abatement of lease money or otherwise, as is provided in section 11-B of the said lease act, approved November 30, 1915." The first section of the lease contract executed on May 11, 1917, provided: "The said party of the first part, . . in consideration of the premises and of the conditions, covenants, and stipulations herein set forth, does hereby lease, for a term of fifty (50) years . . to the said party of the second part . . the said Western and Atlantic Railroad, a railroad running from the City of Atlanta in the State of Georgia to the City of Chattanooga in the State of Tennessee, including the terminals thereof, and its property other than its railroad property not connected with either of its terminals, . . except the following pieces or parcels of land, to wit:" describing two improved lots in Chattanooga, Tennessee. Other than as has just been set out, no reservations were made by the State from this lease of any property of the Western and Atlantic Railroad; and as this court has already decided that the land over which the buildings are proposed to be erected by Peachtree-Whitehall Inc. belongs in fee simple to the State (*Mitchell* v. *W. & A. R.*, 167 *Ga.* 728, 146 S. E. 556), as a part of said railroad, we are of the opinion that the Nashville, Chattanooga and St. Louis Railway, under the terms of the lease contract of 1917, acquired the right to use both the overhead and underground as well as surface rights in the land involved in this controversy.

Numerous affidavits were introduced by both parties on the hear-

ing, as to whether the space proposed to be utilized in the construction of the buildings by Peachtree-Whitehall Inc. was needed for railroad purposes. It was not made to appear that the construction as proposed would lessen the overhead or side clearance of trains now using the tracks of the Western and Atlantic Railroad. These tracks pass under viaducts erected over the tracks at Whitehall and Broad Streets, and according to evidence of the defendants the erection of the supporting columns for the proposed buildings would not affect the clearance now obtaining. Several witnesses for the defendants testified that the construction proposed has the sanction of sound engineering, and numerous examples are stated in their affidavits where buildings are erected over lines of track. There was evidence in behalf of the plaintiff that the construction of the buildings as proposed would render impossible construction of future side-tracks or loading-tracks; but this testimony did not show that such tracks were needed or would be needed in future, and several of defendants' witnesses testified that the railroad companies owned ample space for caring for its present and future trackage requirements.

The plaintiff contends that the carrying out of the contract between the defendants would be violative of the conditions of paragraph 12 of the contract between the State and the Nashville, Chattanooga and St. Louis Railway. This paragraph provides: "There is hereby expressly reserved to the party of the first part the power to authorize the laying out, building, and construction of such ways, streets, roads, bridges, or viaducts across or along the properties leased as may be deemed to be to the interest of the people of Georgia, without let or hindrance, and without liability over to the party of the second part by abatement of lease money or otherwise, as is provided in section 11-B of the said lease act, approved November 30, 1915." Inasmuch as the contract between the defendants provides that the agreement is subject to all the conditions of the leasehold granted by the State, it appears that the defendants have recognized the State's rights as contained in the quoted reservation; but to clear up all doubt upon the subject, we now expressly hold that should the State desire to use any of this space for the construction of ways, streets, roads, bridges, or viaducts, it would be empowered to do so, despite any agreement between the defendants. As against such reservation on the part

of the State, the defendants will proceed at their peril in the erection of any structure under the contract between them. We conclude that under the pleadings and the evidence the court was authorized to find that under the lease contract entered into between the State of Georgia and the Nashville, Chattanooga and St. Louis Railway, the lessee acquired, for the term of the lease, all rights of the State in the property of the Western and Atlantic Railroad, except the two lots in Chattanooga, including overhead and underground rights to the strip of land constituting part of the right of way between Whitehall and Broad Streets in the City of Atlanta; that the use proposed to be made of these underground and overhead rights by the terms of the contract between the Nashville, Chattanooga and St. Louis Railway of the one part and Peachtree-Whitehall Inc. of the other part does not constitute the use of property needed for railroad purposes; and that under the contract first referred to the lessee named therein was within its rights in entering into the contract with Peachtree-Whitehall Inc. In these circumstances the judgment denying an interlocutory injunction will not be reversed.

*Judgment affirmed. All the Justices concur.*